UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAN P. JUMONVILLE | CIVIL ACTION |
| VERSUS | NO: 06-4022 |
| CITY OF KENNER ET AL. | SECTION: "S" (3) |

ORDER AND REASONS

**IT IS HEREBY ORDERED** that the motion for summary judgment of the City of Kenner, Mayor Edmond J. Muniz, and Councilwoman Jeannie M. Black is **GRANTED**. (Document # 22.)

I. BACKGROUND

Jan P. Jumonville is the owner of property located at 3857 Martinique Avenue in Kenner, Louisiana. The property has been vacant for approximately 15 years, it is partially gutted, it has no kitchen or bath, and there are no active utilities. The City of Kenner determined that Jumonville's property should be demolished after taking the following undisputed steps.

On June 23, 2005, the City of Kenner advised Jumonville by mail that there was great concern as a result of complaints by neighbors and the personal observation of Kurt Garcia, counsel for the City of Kenner, about the property at 3857 Martinique Avenue. Jumonville was advised that, in accordance with Kenner Building Code Article 205, the City of Kenner would

inspect the property on June 30, 2005 at 10:00 a.m.

On June 29, 2005, Jumonville responded, challenging the allegation that her property was unsafe, dangerous, and abandoned.  Jumonville refused an inspection of her property without proof of an unsafe, dangerous or hazardous condition.

On August 18, 2005, the City of Kenner adopted Resolution No. B-14977 ordering Jumonville to show cause on September 15, 2005, why the home should not be declared a public nuisance and why she should not be ordered to repair or rehabilitate the building.  On August 26, 2005, the Kenner Inspections & Code Enforcement Department inspected the property and determined that it was unfit for human habitation and a public nuisance.

A public hearing was held on December 15, 2005, and Jumonville was present.  The City Council passed Resolution B-14994 granting Jumonville six months to repair the property.  If Jumonville did not comply, a hearing would be held to determine what further action was appropriate.

On June 1, 2006, Garcia advised Jumonville that the City of Kenner would inspect her property on June 12, 2006 at 10:30 a.m., pursuant to Kenner Building Code Article 205.  An inspector from the City of Kenner inspected the property and found it to be unsafe for human habitation.  Jumonville had not made any of the repairs ordered at the December 15, 2005, hearing.  On June 12, 2006, Jumonville was advised by certified mail, return receipt requested, that there would be s second public hearing on July 20, 2006, at 6:00 p.m.  The receipt was returned, indicating that delivery was made personally on Jumonville on June 19, 2006, at her residence.  In addition, on July 6, 2006, the City Council passed Resolution No. B-15135, which

required Jumonville to appear at the July 20, 2006, hearing to show cause why her property should not be demolished. Jumonville contends that she was not served with a copy of the resolution.

A public hearing was held on July 20, 2006. Jumonville did not attend, but several neighbors were present to urge the City Council to demolish the property. The City Council voted unanimously to demolish the property and passed Resolution No. B-15147. Notice of the resolution was mailed to Jumonville on July 21, 2006. Jumonville was in the Ukraine, and one of her neighbors signed for the correspondence. Jumonville received her mail two days later.

Jumonville filed a "Petition for Damages and Appeal of the City of Kenner's Resolution"[1] and an amended complaint against the City of Kenner, Mayor Edmond J. Muniz, and Councilwoman Jeannie M. Black, in their official capacities[2] (collectively, the City of Kenner). She alleges claims, pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986 and 18 U.S.C. §§ 1951 and 1962, that the defendants conspired to deprive her of her rights under the Equal Protection Clause, the Due Process Clause, and the First and Fourteenth Amendments of the United States Constitution. She also alleges state-law claims of a violation of her rights

---

[1] There is no federal jurisdiction to appeal the resolution of the City Council because there is neither federal question jurisdiction nor diversity jurisdiction.

[2] A claim against an individual in his or her official capacity is a claim against the municipality. The complaint does not allege individual-capacity claims against Mayor Muniz and Councilwoman Black. See Supplemental and Amended Complaint at ¶ 14E ("The Mayor, Black and the City acted under official policy and custom."). Unlike suits against officials in their individual capacities, municipal entities do not enjoy immunity from suit, either absolute or qualified. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 113 S.Ct. 1160, 1162 (1993). Therefore, qualified immunity is not an issue in the case.

under Article 1 section 4 of the Louisiana Constitution and defamation. She seeks an injunction to restrain the City of Kenner from depriving her of her property rights, general damages, punitive damages, and costs and attorney's fees.

The defendants filed a motion for summary judgment.

## II. DISCUSSION

### A.  Legal standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### B.  Municipal liability under § 1983

Jumonville alleges that the City of Kenner violated her constitutional rights under the Due Process Clause, the Equal Protection Clause, the First Amendment, and the Fourteenth

Amendment. Specifically, Jumonville alleges that the City of Kenner selectively enforces its Code of Ordinances, retaliated against her and harassed her through malicious prosecution, failed to investigate and inspect the property, and failed to properly train and supervise Code enforcement personnel.

The City of Kenner contends that Jumonville has not identified any custom or policy which reflects deliberate indifference to the deprivation of her constitutional rights. The City of Kenner argues that the record reflects that Jumonville was provided with notice, a hearing, and a reasonable period during which she could correct the problems with her property, but made no attempt to do anything.

A local governmental body is liable for damages under § 1983 for constitutional violations resulting from official city policy. See Monell v. Dep't of Soc. Serv., 98 S.Ct. 2018, 2035-36 (1978). A suit against Mayor Muniz and Councilwoman Black in their official capacities is in essence a suit against the City of Kenner. Woodard v. Andrus, 419 F.3d 348, 352 (5th Cir. 2005) (citing Monell, 98 S.Ct. at 2035 n.55. A municipality cannot be held vicariously liable under 1983 for the constitutional torts of its employees or agents. Monell, 98 S.Ct. at 2037. To establish liability for a constitutional violation against the City of Kenner, Jumonville must demonstrate that the alleged constitutional offense is the policy or custom of the City of Kenner. Woodard v. Andrus, 419 F.3d at 352. "[A] government's liability is not confined to laws or actions that have been given formal approval through an entity's policymaking channels. Id. A policy or custom becomes official for purposes of § 1983 when it results from the decision or acquiescence of the municipal officer or body with "final policymaking authority" over the

subject matter of the offending policy. Gros v. City of Grand Prairie, 181 F.3d 613, 615 (5th Cir. 1999). Id. (internal citations omitted). "Monell and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such a reading." Pitrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). "[A] policymaker, an official policy and the 'moving force' of the policy are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." Id.

A careful reading of the complaint and supplemental amended complaint and a review of the relevant evidence indicate that Jumonville does not specifically identify an ordinance, regulation, or a well-settled custom or policy in violation of her constitutional rights. Absent an allegation of an ordinance, regulation, policy, custom or practice, Jumonville can prove no set of facts in support of her constitutional claims of violations of the Due Process Clause, the Equal Protection Clause, the First Amendment, and the Fourteenth Amendment which would entitle her to relief against the City of Kenner, Mayor Muniz, and Councilwoman Black in their official capacities. Accordingly, the defendants have met the burden of establishing the absence of evidence supporting an essential element of Jumonville's constitutional claims, and the motion for summary judgment on the § 1983 claims is granted.

**C.  Sections 1981, 1985, and 1986 claims**

Jumonville alleges claims of violations of her constitutional rights under §§ 1981, 1985, and 1986. Although Jumonville does not specifically allege the section of § 1985 under which her claim is brought, § 1985(3) is the section which deals with depriving persons of rights or

privileges.

Sections 1985(3) and 1986 are directed at conspiracies to interfere with civil rights. Bryan v. City of Madison, Miss., 213 F.3d 267, 276 (5th Cir. 2000). To state a claim under § 1985(3), Jumonville "must allege that two or more persons conspired to directly, or indirectly, deprive [her] of the equal protection of the laws or equal privileges and immunities under the laws." Newsome v. E.E.O.C., 301 F.3d 227, 232 (5th Cir. 2002). Further, to state a § 1985(3) claim, Jumonville "must allege that the conspirators were motived by her race." Id. "[A] valid § 1985 claim is a prerequisite to a § 1986 claim." Bryan v. City of Madison, 213 F.3d at 276.

"To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." Green v. State Bar of Texas, 27 F.3d 1083, 1086 (5th Cir. 1994).

Jumonville's complaint makes no allegation that the actions of the defendants were motived by any racial animus. Accordingly, there is no genuine issue of material fact, and the defendants are entitled to judgment as a matter of law on the § 1981, § 1985, and § 1986 claims.

**D. Violation of 18 U.S.C. §1951 (the extortion statute)**

Jumonville alleges claims under §§ 1951. Section 1951, the "extortion statute," prohibits interference with commerce by threats or violence by "Whoever . . . affects commerce . . . by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this

section."

Courts that have addressed the issue of whether there is a private right of action under the extortion statute have found that it a "bare criminal statute with no support for a private cause of action in the legislative history."  See Wisdom v. First Midwest Bank of Poplar Bluff, 167 F.3d 402, 408-09 (8th Cir. 1999).  Accordingly, Jumonville may not bring a private right of action under § 1951, and the City of Kenner is entitled to summary judgment as a matter of law on the § 1951 claim.

**E.  Violation if 18 U.S.C. § 1962 (the racketeering statute)**

Section 1962(a) states in relevant part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of Sec. 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . .

Section 1962(b) states:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Section 1962(c) states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Section 1962(d) makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." "Section 1962(d), unlike § 1962(c) is not a substantive RICO offense; rather § 1962(d) merely makes it illegal to conspire to violate any of the preceding sections of the statute." United States v. Quintanilla, 2 F.3d 1469, 1484 (7th Cir. 1993).

"To prove a pattern of racketeering activity, a plaintiff must show at least two predicate acts of racketeering that are related and amount to or pose a threat of continued criminal activity." Tel-Phonic Services, Inc. v. TBS Intern., Inc., 975 F.2d 1134, 1139-40 (5th Cir. 1992). "Establishing the minimum number of predicates, however, is not sufficient to establish a pattern; the racketeering predicates must be *related* and amount to or pose a threat of *continued* criminal activity." Id. at 1140. The alleged predicate act must also satisfy the temporal concept of "continuity." Id." Congress was concerned in RICO with long-term criminal conduct." Tel-Phonic Services, Inc., 975 F.2d at 1140. Absent a showing of a "series of racketeering acts", the requirement of a level of continuity for a RICO violation is not met. Id.

There are no allegations in Jumonville's complaint that can be construed as a pattern of ongoing criminal activity by the City of Kenner. Accordingly, there are no genuine issues of material fact, and the City of Kenner is entitled to judgment as a matter of law on the § 1962 claim.

**E.  Claim under Article 1 Section 4 of the Louisiana Constitution**

Jumonville alleges that the City of Kenner violated her constitutional rights to use and

9

control her private property in order to satisfy political persons and their constituents.[3]

Louisiana Constitution article I, section 4 provides in part:

(A) Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property.  The right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.

(B)(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into the court for his benefit.  Except as specifically authorized by Article VI, Section 21 of the Constitution, property shall not be taken or damaged by the state or its political subdivisions: (a) for predominant use by any private person or entity; or (b) for transfer of ownership to any private person or entity.

"[A] state may in the proper exercise of its police power, authorize the destruction of such property as has become a public nuisance, or has an unlawful existence or is obnoxious to the public health, public morals, or public safety, without compensation and without judicial inquiry, notwithstanding [a constitutional] prohibition." State v. Jackson, 94 So. 150, 152 (La. 1922).

The evidence does not establish that the City Council's actions constitute a taking in violation of the Louisiana Constitution.  After notice, an opportunity to be heard, and a six-month extension to repair the property, the City Council exercised its police power to address the property which it determined had become unsafe and dangerous.  This exercise of police power does not violate Jumonville's constitutional rights.  There are no disputed issues of material fact, and the City of Kenner is entitled to judgment as a matter of law.

---

[3] In her opposition to the motion for summary judgment, Jumonville argues that the property was taken or damaged when the inspector illegally entered her secure and locked home. Jumonville did not allege such a claim in the complaint.

**F.  Defamation**

Jumonville alleges that the representatives of the City of Kenner have defamed her with statements they knew were false and published those statements to the public in the newspaper. Specifically, Jumonville contends that Councilwoman Black demeaned her and made her the object of ridicule at the December 15, 2005, televised City Council meeting.  Black stated "There are only two dirty words in Kenner: FEMA and Jumonvilles."  Further, when Jumonville requested an exhibit number, Black kept repeating "Da-ah! Da-ah!"  Jumonville further contends that on July 20, 2006, Councilwoman Black stated as follows:

> These particular people are what I would have to call blighted property owners. They own numerous houses.  What they do is they let the house fall into deterioration until they find such time that this is going to be coming up before the City and then they'll go out and they'll throw a tarp on the roof or they'll try and put a nail in the fence.  I noticed that they're not here tonight because they know, they knew that there was no proof that they could say they did anything in the home.  What they are going to try and do?  What she's going to try and do is she's going to try and say, well you all weren't in it in the past six months and we did this and we did that because they are refusing to let any of the City Code Enforcement go into the home.  They are going to try and say that it was because of the hurricane but believe me and trust me and all these people that are here in the audience tonight, this home has been in this situation for eighteen years.  So I'm going to pass some of these pictures . . . down so that we can all see that nothing has still been done.  I think you'll have about eighteen people out there with sledgehammers, nineteen including me, that would be glad to go out there and help demolish this.

"To maintain an action in defamation, the following elements must be shown:  (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury."  Gugliuzza v. K.C.M.C., Inc., 606 So.2d 790, 791 (La. 1992); La. Civ. Code art. 2315. A communication is defamatory if it tends to harm the reputation of another so as to lower him

11

in the estimation of the community." Id. (internal quotation and citation omitted).  "Malice, for purposes of the tort of defamation, is a lack of reasonable belief in the truth of the allegedly defamatory statement.  Only when it is found that a statement has been made without reasonable grounds for believing it to be true can the person making the statement be found to be motivated by malice or ill will."  Thinkstream, Inc. v. Rubin, 971 So.2d 1092, 1101-02 (La. Ct. App. 2007) (citing Costello v. Hardy, 864 So.2d 129, 140 (La. 2004)).

"The question of whether a communication is capable of a particular meaning and whether that meaning is defamatory is one for the court."  Guilbeaux v. Times of Acadiana, Inc., 661 So.2d 1027, 1031 (La. Ct. App. 1995) (citing Sassone v. Elder, 626 So2d 345, 352 (La. 1993)).  The defamatory words "must be 'of and concerning' the plaintiff or, directly or indirectly, cast a personal reflection on the plaintiff."  Gugliuzza, 606 So.2d at 791.  "When a court determines the communications at issue are not defamatory, and therefore not actionable, the court may pretermit discussion of the other elements of defamation."  Guilbeaux, 661 So.2d at 1031 (citing Sassone, 626 So.2d at 352).

The evidence does not establish that the statements by Councilwoman Black at the hearings and to the newspaper were made with malice or ill will.  There were reasonable grounds for Councilwoman Black to believe that Jumonville was the owner of blighted property and that she was making no effort to repair the property.  The statements were made at a City Council meeting in the presence of neighbors who attended the meeting to obtain relief, and they were supported by photographs of the property that was the subject of the discussion.  While the words used by Councilwoman Black may have been unflattering, Jumonville has not established

12

that they were defamatory or that she suffered injury because of the statements. Accordingly, there are no disputed issues of material fact, and the City of Kenner is entitled to judgment as a matter of law.

### III. CONCLUSION

There are no disputed issues of material fact, and the defendants are entitled to judgment as a matter of law. Jumonville has not alleged that there is a well-settled policy or custom in violation of her constitutional rights to support a claim under § 1983 against the City of Kenner, and Mayor Muniz and Councilwoman Black in their official capacities. Jumonville has not alleged that the defendants' actions were motivated by racial animus in order to support a claim under §§ 1981, 1985, and 1986. Jumonville has no private right of action under § 1951, and she has not established a pattern of ongoing criminal activity to support a claim under § 1962. Jumonville has not established a violation of Article 1, section 4 of the Louisiana Constitution, and she has not established that statements made at the City Council meeting and published to the newspaper were defamatory.

New Orleans, Louisiana, this 26th day of February, 2008.

_____
**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**